UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ROBERT GALLEGOS,<br><br>Plaintiff,<br><br>v.<br><br>GLADDEN BRUCE, et al.,<br><br>Defendants. | No. 1:24-cv-01433-KES-SAB (PC)<br><br>ORDER TO SHOW CAUSE WHY ACTION SHOULD NOT BE DISMISSED AS BARRED BY THE STATUTE OF LIMITATIONS<br><br>(ECF No. 1) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the instant action on December 19, 2023, in the United States District Court for the Eastern District of California, Sacramento Division. On November 22, 2024, the action was transferred to the Fresno Division, based on the allegations raised in the first amended complaint.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that

1

1  "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. §
2  1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

3      A complaint must contain "a short and plain statement of the claim showing that the
4  pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not
5  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
6  conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell
7  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate
8  that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v.
9  Williams, 297 F.3d 930, 934 (9th Cir. 2002).

10     Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings
11 liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d
12 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be
13 facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer
14 that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss
15 v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant
16 has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's
17 liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d
18 at 969.

19 **II.**
20 **COMPLAINT ALLEGATIONS**

21     As with Plaintiff's original complaint, Plaintiff's thirteen-page amended complaint is
22 difficult to understand and somewhat incoherent. Nonetheless, the Court will attempt to summarize
23 the allegations as best as possible.

24     In April 2018, the Psychiatric Inpatient Program at SVSP (SVSP-PIP), consisted of a
25 psychiatrist, mental health primary clinician, correctional counselor, registered nurse, and one other
26 person. The group determined a treatment plan and decided when an inmate patient is stable enough
27 to discharge from PIP to a higher level of care program.
28 ///

At SVSP, psychiatrist Gayle Gaines interviewed Plaintiff when he was in a rubber room on suicide watch in order to release Plaintiff. Gaines altered manufactured the interview to clear Plaintiff from suicide observation in violation of policy. Gaines manufactured, altered, and fabricated medical documents stating Plaintiff was stable, despite the fact that Plaintiff had not completed the mental health program.

On April 6, 2018, Plaintiff was pulled out of bible class and informed that he had been spontaneously discharged from suicide watch (without his primary clinician's knowledge). Plaintiff refused to return to his cell because of safety concerns and was advised transportation officers would return on Monday morning. Dr. Moyedi was informed of Plaintiff's safety concerns.

When safety concerns are expressed by an inmate, the inmate should be placed in non-disciplinary administrative segregation pending an investigation of the claims. Plaintiff informed sergeant Cole of his safety concerns who advised it would be remedied before Monday. Plaintiff again stated his concerns to SVSP counselor Partida who laughed and mocked Plaintiff, stating "Sure you do." Partida then took the lieutenant's computer and dictated to the Institution Classification Committee (ICC) to disregard Plaintiff's concern for his safety and force a transfer to KVSP.

Plaintiff expressed his safety concerns to psych tech S. Martinez who immediately charted Plaintiff's concerns fulfilling his duty and emailed Partida the names of the individuals who posed a threat to Plaintiff.

On April 9, 2018, at 6:00 a.m., staff went to Plaintiff's cell stating that he was going to KVSP. Appeals coordinator C. Gonzales rejected and cancelled an appeal submitted on behalf of Plaintiff by unit supervisor Patrica Brockmeyer proving he was forced back to KVSP where his life was previously threatened. Because KVSP does not an Enhanced Outpatient Program (EOP) for mental health inmates, Plaintiff committed the felony of arson in order to be sent to the administrative segregation unit and then sent to EOP hub instead of KVSP. The staff hit the alarm, threw open Plaintiff's cell tray slot, grabbed the fire extinguisher and discharged the entire flame retardant into the flames. Plaintiff was prone out in the hallway and refused to cuff up. The rules violation report stated that Plaintiff was throwing his legs and arms out at the staff, expressing

1  active resistance.

2      The fire department arrived and the entire facility is evacuated as the facility is filled with
3  smoke. Several officers and inmates had to go to the hospital for smoke inhalation, and Plaintiff
4  was dragged out onto the outside yard. Plaintiff is then placed in a special transit van and he was
5  transported to KVSP. Plaintiff is then transferred to receiving and release where investigators
6  spoke with Plaintiff who explained how his safety concerns escalated to the arson incident. KVSP
7  officers M. Rivera and R. Reynaga are the only officer's present in the receiving and release unit
8  even though a sergeant is mandated to be present. The registered nurse was "called away" upon
9  Plaintiff's arrival.

10     The officer's told Plaintiff to go to yard and express his safety concerns, despite the fact that
11 Plaintiff previously expressed his fear and the attempt to place him onto the yard to be murdered.
12 The officer's told Plaintiff that he was going to "A" yard instead of the EOP sensitive needs yard.
13 A. Rivera began grabbing Plaintiff's property asking if he was going to yard to which Plaintiff said
14 "No." Officer R. Reynaga then suddenly shoves Plaintiff's arm with an OC pepper spray weapon
15 nozzle within an inch of Plaintiff's right eye. Plaintiff felt tearing in the blood vessels of his right
16 eye as officer Reynaga continued to pepper spray Plaintiff.  When Reynaga stopped using the
17 spray, he stated, "You spit on him, You Threw your shoe at his head!" Plaintiff protested stating it
18 was not true. The alarm is then activated and Plaintiff was handcuffed in need of decontamination.
19 Both Rivera and Reynaga escorted Plaintiff out to the area used for decontamination.  While
20 Plaintiff is down on his knees, Reynaga stepped on the handcuffs on Plaintiff's writs and pulled the
21 back of his hair causing him to fall flat on the floor. Reynaga then make threats to Plaintiff stating
22 he deserved what was about to happen to him.

23     Plaintiff is not provided any decontamination, and he is then "dragged to [his] feet, then
24 dragged back into R&R," the entire pleading to be decontaminated. Plaintiff is then dragged back
25 to this cell and thrown down on his stomach, at which point Rivera "drives" his knee into Plaintiff's
26 lower back. Plaintiff is left in this condition for an hour to the point that he is crying in pain.
27 Eventually, officers Rivera and Reynaga remove Plaintiff from his cell and take him to the center
28 cell where he continues to beg to be decontaminated. Rivera told Plaintiff to sit down on the dirt

1  and not move or else he would not be decontaminated or given any water. Near shift change, Rivera
2  takes the cuffs off Plaintiff then orders that he take off the boxers soaked in OC spray. The nurse
3  finally returns for a medical report of injury that she fabricates in an attempt to cover up for what
4  was done to Plaintiff. Reynaga fabricated his report to read that Plaintiff threw his shoe at him, spit
5  on him, and during the decontamination process he was wet with water destroying said falsified
6  evidence on his pant leg. The reports did not list any of witnesses who were present.

7  Plaintiff is refused medical for over ten days allowing the healing process to clean up most
8  of the damage done to his eye, then the primary care physician lies about no damage or visible tears
9  to his right eye. Plaintiff received a felony charge for the arson in Monterey County, 18CR007472,
10 with a life sentence exposure, "yet all of this was swept aside corruptly as means to force [him]
11 back to KVSP," where he feared for his safety.

12 From the administrative segregation unit at KVSP, Plaintiff was transported to SVSP
13 administrative segregation for a court hearing, and Plaintiff submitted a grievance while there for
14 the misconduct at both facilities. Deputy Inspector General Davis discovered the grievance and
15 ordered a video interview with Plaintiff. Davis indicates that SVSP cannot find the video recording,
16 despite that he ordered it be reproduced.

### III.

### STATUTE OF LIMITATIONS

19 In federal court, federal law determines when a claim accrues, and "under federal law, a
20 claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of
21 the action.' " <u>Lukovsky v. City and County of San Francisco</u>, 535 F.3d 1044, 1048 (9th Cir.
22 2008) (quoting <u>Two Rivers v. Lewis</u>, 174 F.3d 987, 991 (9th Cir. 1999); Fink v. Shedler, 192
23 F.3d 911, 914 (9th Cir. 1999)). In the absence of a specific statute of limitations, federal courts
24 should apply the forum state's statute of limitations for personal injury actions. <u>Lukovsky</u>, 535
25 F.3d at 1048; <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (2004); Fink, 192 F.3d at 914. California's two-
26 year statute of limitations for personal injury actions, which requires that the claim be filed within
27 two years, applies to 42 U.S.C. § 1983 claims. Cal. Code Civ. Proc., § 335.1; <u>see also</u> <u>Jones</u>, 393
28 F.3d at 927.

In actions where the federal court borrows the state statute of limitations, the Court should also borrow all applicable provisions for tolling the limitations period found in state law. See Hardin v. Straub, 490 U.S. 536, 539 (1989). Pursuant to California Code of Civil Procedure, § 352.1, a two-year limit on tolling is imposed on prisoners. Section 352.1 provides, in pertinent part, as follows:

> (a) If a person entitled to bring an action, ... is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Code Civ. Proc., § 352.1. Thus, prisoners are allowed a four-year time period in which to file a § 1983 case.  In addition to the four years, under the Prison Litigation Reform Act, an applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

If a complaint is untimely, it may still proceed if subject to equitable tolling. Fink v. Shedler, 192 F.3d 911, 916–17 (9th Cir. 1999). For equitable tolling to apply, plaintiff must "show three elements: timely notice to the defendant, lack of prejudice to the defendant, and reasonable and good faith conduct by the plaintiff." Neil through Cyprian v. Park, 833 F. App'x 689, 690 (9th Cir. 2021) (internal quotations omitted.)

Although the statute of limitations is an affirmative defense that normally may not be raised by the Court sua sponte, it may be grounds for sua sponte dismissal of an in forma pauperis complaint where the defense is complete and obvious from the face of the pleadings or the court's own records. Franklin v. Murphy, 745 F.2d 1221, 1228-1230 (9th Cir. 1984); Levald, Inc. v. City of Palm Desert, 988 F.2d 680, 686-87 (9th Cir. 1993).

Based on a review of Plaintiff's complaint, it appears that the statute of limitations may be bar to some of Plaintiff's claims, particularly the claims arising in 2018, and there are no apparent allegations to demonstrate that Plaintiff is entitled to equitable tolling.  The Court will afford Plaintiff an opportunity to show cause why the case should not be dismissed as time-barred since the statute of limitations ran on Plaintiff's claims before he commenced this action prior recommending dismissal of this action.  If Plaintiff claims that he is entitled to a delayed accrual

of the statute of limitations, or tolling of the statute of limitations, Plaintiff must explain in detail the factual and legal basis therefor, and must specify the reason(s) for Plaintiff's apparent delay in commencing this action.

## III.

## CONCLUSION AND ORDER

The court finds that on the face of Plaintiff's Complaint for this action, his claims appear barred by the applicable statute of limitations. Therefore, the court shall issue an order for Plaintiff to show cause why this case should not be dismissed as barred by the statute of limitations

Accordingly, it is HEREBY ORDERED that:

1. Within **twenty-one (21)** days from the date of service of this order, Plaintiff shall show cause why the action should not be dismissed as barred by the statute of limitations; and
2. Failure to comply with this order will result in a recommendation to dismiss the action.

IT IS SO ORDERED.

Dated:   **February 4, 2025**

STANLEY A. BOONE
United States Magistrate Judge